## BROWN *vs.* FITZ.

The plaintiff in replevin, in order to prove property in himself, offered in evidence a deposition in which it was stated that the plaintiff's wife's father " sold and conveyed" to her the articles replevied, before her marriage.—*Held*, that these words did not imply that the transfer was by an instrument in writing, and that the evidence was competent to prove the plaintiff's title.

A husband may maintain replevin for personal chattels belonging to his wife at the time of the coverture, without joining her in the suit.

REPLEVIN, for certain articles of personal property.

Plea, that the property in the goods was in the defendant, and issue thereon.

The plaintiff offered in evidence the deposition of one Hannah Fitz, who deposed that she was present when the

goods in controversy were replevied; that all of them once belonged to her husband, now deceased, and that he sold and conveyed them to Sally Fitz, the daughter of the witness, and now the wife of the plaintiff, on the 26th day of September, 1838, and that since that time her daughter married the plaintiff.

It was objected that the testimony was incompetent, because the language used by the witness proved that the contract of sale and conveyance was in writing.

A verdict was taken, by consent, for the plaintiff, subject to the opinion of the court.

*James Bell*, for the defendant, referred to *Sugden on Venders* 182, as showing that the word "conveyance" imported a deed.

He also contended that the suit should have been brought by Brown and his wife, and not by Brown alone; and alleged that there should be something to show that the property had been reduced into possession by the husband, in order that he might maintain the suit, and referred to *Tucker* vs. *Gordon*, 5 *N. H. Rep.* 564; 1 *Ch. Pl.* 17, 21, and 2 *St. Ev.* 675.

*Pillsbury*, for the plaintiff, upon the second point referred to 16 *Mass.* 149, as showing that the husband might sue alone, although the property were not reduced into possession.

Gilchrist, J. If, from the testimony of the witness, it must be inferred that a bill of sale of the goods, or some written contract, was made by the father of Mrs. Brown at the time to which the witness refers, the instrument should be produced, or its absence accounted for; and unless that be done, there will be no evidence of property in the plaintiff. The first enquiry, then, is, whether the words "sold and conveyed," be susceptible of the construction put upon them by the counsel for the defendant. According to the most approved modern lexicographer, the word "sell" is used "where

something is given or delivered in exchange for money, or security for money." The word "convey" means "to carry;" "to transport;" "to take to or from;" "to import."— *Richardson's New English Dictionary, in verb.* According to Jacobs, a sale is the transferring the property of goods from one to another, upon a valuable consideration ; and such is substantially the meaning given it by *Chitty*, and *Comyn on Contracts.* A "conveyance" is a deed which passes or conveys land from one man to another. *Jac. Law Dic. in verb.* But whether the definitions given by Jacobs be technically correct, or not, the meaning of the words is to be ascertained by the context. The witness was speaking of property a sale of which need not be proved by an instrument in writing. The defendant's argument is, substantially, that by using the words "sold and conveyed," the same idea is communicated as if she had said, "sold and conveyed by an instrument in writing." Now the word "sale" does not imply a written contract. The word "convey," if it imply a written instrument, refers to a deed of land. Had she been speaking of land, as it can be conveyed only by deed, the word would have implied a deed. But she was speaking only of personal chattels ; and as we are called upon to criticise the language she used, and ascertain the ideas it might properly convey, our opinion is, that, considering the subject to which the words referred, they do not mean that anything more was done than was necessary to transfer the property in the articles from the owner to Mrs. Brown, and that from them it cannot be inferred that there was an instrument in writing, that being unnecessary.

The other point in the case is settled by the authorities. Marriage is an absolute gift to the husband of all the goods, personal chattels and estate, which the wife was actually and beneficially possessed of at that time in her own right. *Co. Litt.* 300. One of the effects of marriage upon the feme's rights and property is, to make her personal chattels in possession change owners, and to vest them wholly in the baron.

*Hammond on Parties* 194. He may sue alone for the recovery of them. 3 *T. R.* 631, *Milner* vs. *Milnes; Co. Litt.* 351, *b; Com. Dig., Baron & Feme,* (E, 3.) And the marriage also vests in the husband, chattels personal of the wife, which at the time of the marriage were in the possession of a third person. And, therefore, he may bring detinue or replevin for them, without joining his wife in the action. *Bull. N. P.* 50–53; *Powes* vs. *Marshall,* 1 *Sid.* 172; 1 *Bacon's Ab.* 501, *Bourn* vs. *Mattaire; Selw. N. P.* 280.

The case of *Tucker* vs. *Gordon,* 5 *N. H. R.* 564, recognizes the well settled doctrine that for all causes of action which were complete in the wife before the coverture, she must be' joined in the suit. This refers to choses in action, such as debts, &c., and other property recoverable by suit, and not to personal chattels in possession. For all debts due the wife before the marriage, the husband cannot maintain a suit without joining her, as he has only a qualified right in them, by reducing them into possession during her life, and cannot disagree to her interest in them. 3 *T. R.* 627, *Milner* vs. *Milnes;* 1 *M. & S.* 176, *Rumsey* vs. *George.* The case has no bearing upon the question now raised, as this suit relates to personal chattels in possession at the time of the marriage.

*Judgment on the verdict.*